EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LIGHTHOUSE NEUROLOGICAL
REHABILITATION CENTER, INC.,
and HURLEY MEDICAL CENTER,

        Plaintiffs,

                                          Case No.: 10-10154-BC

v.                                     Honorable Thomas L. Ludington

ALLSTATE INSURANCE COMPANY,

        Defendant.
_____/

### OPINION AND ORDER GRANTING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Michigan's no-fault motor vehicle insurance act requires auto insurance carriers to provide coverage for "accidental bodily injuries" while excluding coverage for injuries "suffered intentionally." Mich. Comp. Laws § 500.3105. The present dispute concerns the proper manner of distinguishing between the two types of injuries.

The federal Emergency Medical Treatment and Active Labor Act of 1986, by way of background, requires all Medicare-participating hospitals with emergency departments to care for the critically injured, regardless of the patient's ability to pay or how the injury occured. 42 U.S.C. § 1395dd. Congress, however, did not provide funding to reimburse the hospitals for the obligations the act imposed. Accordingly, to the extent that the intentional injury exclusion is defined broadly under Michigan's no-fault act, the cost of caring for the injured who lack medical insurance and otherwise are unable to pay is effectively allocated to the medical care provider. To the extent that the exclusion is defined narrowly, the cost of care is allocated to the no-fault insurance carrier.

The text of the no-fault act requires that insurers provide policyholders benefits for "accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle." Mich. Comp. Laws § 500.3105(1). The act continues: "Bodily injury is accidental as to a person claiming personal protection insurance benefits unless suffered intentionally by the injured person or caused intentionally by the claimant." *Id*. § 500.3105(4). This statutory language, in turn, raises two questions of interpretation.

The first question regards the rules for determining whether an injury is accidental or intentional pursuant to § 500.3105. Specifically, is an injury suffered intentionally if the person knows (or should know) that an act is substantially certain to result in bodily injury? Or is an injury intentional (thus excluded from no-fault coverage) only if the person subjectively intended both the act and the injury?

The second question regards the burden of proof for establishing the relevant facts. Is establishing that the injury was either accidental or intentional a trigger of coverage issue, such that the claimant must prove that the injury was accidental to be eligible for benefits? Or is it an exclusion from coverage issue, such that the insurer must prove the injury was intentional to withhold benefits?

Recognizing that the Michigan Supreme Court has yet to specifically address these questions, this Court certified them to that court pursuant to Michigan Court Rule 7.305(B)(1). The Michigan Supreme Court, as is its prerogative, declined to take up the questions. *See generally* M. Bryan Schneider, *"But Answer Came There None": The Michigan Supreme Court and the Certified Question of State Law*, 41 Wayne L. Rev. 273, 315 (1995) ("The Michigan Supreme Court, to say the least, is not very receptive to the certified question."). Concurring in the decision to decline to take up the questions, the court's chief justice wrote separately to

explain: "I see no basis to conclude that an injury is suffered intentionally, and that personal protection insurance benefits may be denied, where a person engages in an intentional act where injury is substantially certain to occur." He further explained that his court "should not expend its limited resources in an attempt to accommodate a federal court judge."

Consequently, it is the task of this Court "to make a considered educated guess as to what conclusion would most likely be reached on the issue by the Michigan Supreme Court." *Wells v. 10-X Mfg. Co.*, 609 F.2d 248, 253 (6th Cir. 1979) (internal quotation marks omitted) (quoting *Ann Arbor Trust Co. v. N. Am. Co. for Life & Health Ins.*, 527 F.2d 526, 527 (6th Cir. 1975)). *Cf. Nolan v. Transocean Air Lines*, 276 F.2d 280, 281 (2nd Cir. 1960) (Friendly, J.).

This case began on April 23, 2009. That evening, Niko Carter was injured in an automobile accident when he was thrown from the roof of a Jeep Cherokee driven by his fiancé, Michele Simon-Whitley. Although Carter lived for nearly a year following the accident, he never regained consciousness. During that time, he accumulated $154,021.50 in expenses for rehabilitation services provided by Plaintiff Lighthouse Neurological Rehabilitation Center and $832,489.75 in expenses for medical care provided by Plaintiff-Intervenor Hurley Medical Center. The Jeep's owner, Whitley's mother Jacquelyn Ann Brown, purchased an insurance policy for the vehicle from Defendant Allstate Insurance Company, making Allstate the highest priority insurer under Michigan law. *See* Mich. Comp. Laws § 500.3115. Hurley and Lighthouse contend that they are entitled to payment from Allstate for the services they provided to Carter. Allstate has refused to pay, contending that because Carter intentionally jumped onto the vehicle, the injuries he sustained were not "accidental" and therefore not covered.

The Michigan Supreme Court, as noted, has not addressed the circumstances under which an injury is "suffered intentionally" under § 500.3105. According to Allstate, an injury is

suffered intentionally when a person intentionally engages in reckless conduct under circumstances that would lead a reasonable person to know that an injury is substantially certain to occur. According to Lighthouse and Hurley — and a long line of decisions of the Michigan Court of Appeals — an injury is suffered intentionally only if the actor also subjectively intended the injury. *E.g.*, *Amerisure Ins. Co. v. Auto-Owners Ins. Co.*, 684 N.W.2d 391, 398 (Mich. Ct. App. 2004) (per curiam); *Cruz v. State Farm Mut. Auto. Ins. Co.*, 614 N.W.2d 689, 694 (Mich. Ct. App. 2000); *Miller v. Farm Bureau Mut. Ins. Co.*, 553 N.W.2d 371, 373 (Mich. Ct. App. 1996) (per curiam); *Schultz v. Auto-Owners Ins. Co.*, 536 N.W.2d 784, 784–85 (Mich. Ct. App. 1995) (per curiam); *Bronson Methodist Hosp. v. Forshee*, 499 N.W.2d 423, 429 (Mich. Ct. App. 1993); *Mattson v. Farmers Ins. Exch.*, 450 N.W.2d 54, 56 (Mich. Ct. App. 1989); *Frechen v. Detroit Auto. Inter-Ins. Exch.*, 326 N.W.2d 566, 568 (Mich. Ct. App. 1982).

As discussed below, the interpretation of the court of appeals in this caselaw is in some tension with the full text of the statute. Yet the Michigan Supreme Court has declined to address the prevailing interpretation. *See, e.g.*, *Univ. Rehab. Alliance, Inc. v. Farm Bureau Gen. Ins. Co. of Mich.*, 763 N.W.2d 908 (Mich. 2009); *Budget Rent-A-Car Sys., Inc. v. City of Detroit*, 757 N.W.2d 865 (Mich. 2008); *Brown v. Mich. Millers Mut. Ins. Co.*, 651 N.W.2d 748 (Mich. 2002). Given this history, and the court's unwillingness to take up the question in the immediate case, it is reasonable to conclude that the Michigan Supreme Court would interpret the statute as the Michigan Court of Appeals has.

Accordingly, although this Court might well interpret it differently if it was a question of first impression, comity and consistency in the law counsel applying the prevailing interpretation. Under Michigan's no-fault act, an injury is suffered intentionally only if the actor subjectively intended both the act and the injury.

Regarding the second question presented — which party bears the burden of proof — both the text of the statute and the case law of the Michigan courts suggest that intentional injury is an exclusion from coverage, placing the burden on the insurer.

First, the text of § 500.3105 creates comprehensive coverage for bodily injury, unless the injury is intentional. Intentional injury is thus excluded from coverage, with the statute providing in pertinent part: "Bodily injury is accidental as to a person claiming personal protection insurance benefits *unless* suffered intentionally by the injured person or caused intentionally by the claimant." *Id.* (emphasis added). And second, the Michigan Court of Appeals concludes that the statute creates an exclusion, labeling it "the intentional injury exclusion." *Bronson Methodist Hosp. v. Forshee*, 499 N.W.2d 423, 429 (Mich. Ct. App. 1993) (citing *Mattson v. Farmers Ins. Exchange*, 450 N.W.2d 54 (Mich. Ct. App. 1989)); *see generally* 2 Mich. Civ. Jur. *Automobiles and Motor Vehicles* § 266 (referring to § 500.3105(4) as "intentional injury exclusion"). Again, the Michigan Supreme Court has given no indication that it would interpret the statute differently on this question either. Because intentional injury is an exclusion from coverage, the insurer bears the burden of proof.

And as Allstate has not produced any evidence suggesting that Carter subjectively intended to injure himself, Lighthouse and Hurley are entitled to summary judgment.

## I

## A

On April 23, 2009, Carter and Whitley attended a family barbeque in Flint, Michigan, where Carter consumed alcohol. About 7:00 p.m., they left the barbeque to return to Whitley's home in Pontiac. Whitley was driving her mother's Jeep when Carter became agitated. Whitley speculated during her deposition that he was upset about his father's recent death and bothered

because the mother of his son had asked him to purchase a birthday cake. On two or three occasions, Carter asked Whitley to let him out of the Jeep. After she complied with his requests, he called her as she drove away and asked her to return and pick him up. She did. Eventually the pair arrived on East Taylor Street near its intersection with Alexander Street and Hardenbrook Park.

At this point, the two key witnesses' accounts diverge. Joseph Robert Randle, Jr., who lives on East Taylor Street, testified that he was sitting on his front porch when he observed a woman driving a sport utility vehicle chasing a man through Hardenbrook Park. The man was dodging behind playground equipment and yelling at her to leave him alone, but the woman in the SUV continued the chase, cursing at the man. The chase continued out of the park and onto East Taylor Street, where the SUV nearly hit the man. It then came to a stop. The man jumped onto the roof of the vehicle, holding, at various times, the luggage rack, windshield wiper, and antenna. With the man on top, the woman abruptly accelerated and stopped several times, ultimately throwing the man over the hood and onto the pavement, where he landed on his head. Randle testified that he believed the woman was trying to hit the man, and that the man jumped onto the roof of the vehicle out of fear. Randle did not observe the man say or do anything that indicated he subjectively intended to injure himself.

Whitley's recollection of the events is rather different. She testified that the second or third time Carter got out of the Jeep, he took her purse with him. After some time — during which she followed him — she convinced him to get back into the Jeep and she was able to retrieve her purse. Then, as they traveled down East Taylor, Carter reached over and punched Whitley in the face. Whitley stopped the Jeep, put it in park, and ran around to the back of the vehicle in an effort to get away from Carter. Carter followed, exiting the passenger side of the

Jeep and also moving toward the rear of the vehicle.  Still trying to get away, Whitley "jumped back in the driver seat and shut my door.  And I went to pull off and then barely accelerated and I heard a thud."  The thud, she recounts, came from the roof of the vehicle.  After she heard the thud, she stopped and Carter slid off the front of the vehicle, landing on his head. Whitley testified that she was traveling at approximately twenty miles per hour when the accident occurred, which is consistent with her initial report to the Allstate adjuster.  Like Randle (the only other living witness to the incident), Whitley did not observe Carter say or do anything that indicated he subjectively intended to injure himself.

As a result of the incident, Carter suffered a traumatic brain injury that ultimately led to his death.  This litigation ensued.

<strong>B</strong>

In December 2009, Lighthouse filed suit against Allstate in Tuscola County Circuit Court.  Allstate removed the action to this Court.  By stipulated order, Hurley was permitted to intervene.  In December 2010, the parties filed the currently pending cross-motions for summary judgment. ECF Nos. 17, 18, 19.

Allstate contends that Carter's conduct demonstrates he subjectively intended to jump onto the Jeep with knowledge that he would be seriously injured as a result of his actions. According to Allstate, Carter's actions demonstrate he intended both the act, jumping onto the Jeep, and the result, serious injury.  Allstate concludes that because Carter's injuries were "suffered intentionally," they are not covered and should therefore remain the responsibility of the medical providers.

Lighthouse and Hurley agree that the evidence demonstrates that Carter intentionally jumped onto the Jeep, but contend that it falls short of establishing that he subjectively intended

to injure himself.  Thus, according to Lighthouse and Hurley, his injuries were not suffered intentionally.  Allstate is responsible for paying the insurance benefits.

On June 23, 2011, the Court entered an order denying the cross-motions without prejudice and certifying two questions to the Michigan Supreme Court:

> (1) Is a bodily injury suffered intentionally when a person engages in reckless conduct that would lead a reasonable person to know that a bodily injury was substantially certain to occur, even though there is no evidence that the injured person subjectively intended to cause the injury?
>
> (2) Must a claimant prove that a bodily injury was accidental to be entitled to coverage under the no-fault act, or is the absence of an accidental bodily injury an exclusion from coverage that must be demonstrated by the insurer in order to withhold benefits?

ECF No. 40.  The Michigan Supreme Court declined to address the certified questions, leaving their resolution to this Court.

## II

Summary judgment should be granted if the admissible evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court must view all facts and draw all reasonable inferences in favor of the nonmovant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## III

## A

Michigan law mandates "personal protection insurance" benefits as part of the no-fault act.  *Rohlman v. Hawkey-Sec. Ins. Co.*, 502 N.W.2d 310, 313 (Mich. 1993).  As the statute's provisions are mandatory, "[the insurance] policy and the statutes relating thereto must be read and construed together as though the statutes were a part of the contract, for it is to be presumed

that the parties contracted with the intention of executing a policy satisfying the statutory requirements." *Id*. at 313 n.3.  In full, § 500.3105 provides:

> (1)  Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.
> (2)  Personal protection insurance benefits are due under this chapter without regard to fault.
> (3)  Bodily injury includes death resulting therefrom and damage to or loss of a person's prosthetic devices in connection with the injury.
> (4)  Bodily injury is accidental as to a person claiming personal protection insurance benefits unless suffered intentionally by the injured person or caused intentionally by the claimant.  Even though a person knows that bodily injury is substantially certain to be caused by his act or omission, he does not cause or suffer injury intentionally if he acts or refrains from acting for the purpose of averting injury to property or to any person including himself.

Mich. Comp. Laws § 500.3105.  The present dispute centers on subsections one and four, specifically, whether Carter's injuries were "accidental" or "suffered intentionally."

The Michigan Supreme Court, as noted, has not addressed this issue.  The Michigan Court of Appeals has, however, in a line of decisions stretching back more than thirty years. And, although this Court is not required to follow the interpretation of the Michigan Court of Appeals, "where a state appellate court has resolved an issue to which the high court has not spoken, we will normally treat those decisions as authoritative absent a strong showing that the state's highest court would decide the issue differently."  *Kurczi v. Eli Lilly & Co*., 113 F.3d 1426, 1429 (6th Cir. 1997) (internal quotation marks and alterations omitted) (quoting *Garrett v. Akron-Cleveland Auto Rental, Inc.*, 921 F.2d 659, 662 (6th Cir.1990)); *see also Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008).

In the first Michigan appellate case to consider the issue, *Frechen v. Detroit Automobile Inter-Insurance Exchange*, 326 N.W.2d 566 (Mich. Ct. App. 1982), the decedent spent an

evening drinking with his wife in a bar.  Sometime after midnight, the couple quarreled and the wife stormed out.  *Id.* at 579.  The decedent followed.  Getting into the car, the wife locked the doors and attempted to drive away.  The decedent "knew that he would be compelled to walk 13 miles home in chilly weather if his wife left him behind.  In order to force his wife to drive him home, [the decedent] climbed onto the hood of the car, so she would be compelled to stop."  *Id.* When the decedent climbed onto the hood, the car was travelling about two miles an hour.  The wife applied the brakes.  And the decedent slid off the hood, injuring himself.  After the insurer denied coverage, litigation followed, with the trial court granting the insurer summary judgment. The Michigan Court of Appeals reversed.  Noting that the case presented an issue of first impression — "whether an unintended injury which resulted from an intentional act falls within the ambit of M.C.L. § 500.3105(4)" — the court held that "since [the decedent's] injuries were the unintended result of an intentional act, rather than the intended result, he was entitled to benefits from the defendant."  *Id.* at 567, 568.  The court went on to expressly reject an objective "foreseeability test" for whether an injury was suffered intentionally, explaining:

> A foreseeability test would greatly limit the liability of the insurer.  Most automobile accidents involve volitional acts, such as speeding, drunk driving, or disobedience to traffic signals, which yield unintentional consequences. Negligence often involves an intentional act which falls below a recognized standard of care.  A calamity is often a foreseeable consequence of a negligent act.  The results of a negligent act are unintended.  If the defendant's position is carried to its logical extreme, a no-fault insurer could refuse to pay benefits to its insured because the mishap was a foreseeable consequence of the insured's negligent act.

*Id.* at 568.  Resting on the slippery slope argument, the court did not address the economic consequences of interpretation of the legislature's decision.  The court did, however, implicitly recognize the moral hazard that always imposing liability on the insurer would create, cautioning:  "It is beyond dispute that the Legislature sought to bar recovery by people who

intended to injure themselves or commit suicide." *Id.* at 567.  Thus, the court adopted a "subjective standard" for liability focusing on the party's "intended result." *Id.*

*Mattson v. Farmers Insurance Exchange*, 450 N.W.2d 54 (Mich. Ct. App. 1989), revisited the issue of the intentional injury exclusion under § 3105.  The plaintiff, a mentally ill young man, was observed one afternoon "staring into space, talking to furniture, remarking that he saw birds in the house and mumbling nonsensically." *Id.* at 55.  His psychiatrist recommended that the young gentleman be committed.  And so his parents took him to the hospital.  While waiting in the emergency room, he went outside, ran into the street, "threw himself in front of several automobiles and suffered serious injuries as a result." *Id.*  Afterwards, he told medical personnel that he ran into traffic in an attempt to kill himself. *Id.* at 56.  The insurer denied coverage and the young man brought suit asserting that he "lacked the mental capacity to form the intent to injure himself." *Id.* at 55.  The trial court granted the insurer's motion for a directed verdict.  The  Michigan Court of Appeals reversed.  The court first noted that the subjective standard applied, adding that "where the injury or resulting death is the natural, anticipated and expected result of an intentional act, courts may presume that both act and result are intended." *Id.* at 56–57 (internal alterations omitted) (quoting *Transamerica Ins. Co. v. Anderson*, 407 N.W.2d 27, 28 (Mich. Ct. App. 1987)).  The court nevertheless reversed and remanded the case for a jury to consider whether or not the plaintiff was capable of forming the requisite intent to injure himself, explaining: "the link between hurling oneself in front of moving cars and injury is obvious and necessary — to the rational mind.  But the statute calls upon us to consider only [the plaintiff's particular] mind, and the evidence is plain that his was not a rational mind." *Id.* at 57.

*Bronson Methodist Hospital v. Forshee*, 499 N.W.2d 423 (Mich. Ct. App. 1993), decided four years after *Mattson*, extended the subjective standard under circumstances amounting to gross negligence.   After consuming alcohol and controlled substances over the course of an evening, a driver began to speed.   A police officer signaled the driver to pull over.   He did not. Instead, "a high-speed chase ensued, covering eighteen miles and attaining speeds . . . over one hundred miles per hour." *Id.* at 425.   The chase ended at an intersection, where the "[t]he car struck an embankment, hit a metal post, was launched, and remained airborne for approximately fifty feet." *Id.*   The driver, a minor, was injured.   His mother brought a claim for no-fault benefits, which the insurer denied.   When the mother brought suit, the insurer "argue[d] that [the driver's] conduct was so reckless as to constitute wanton or reckless conduct that rises to the level of being intentional conduct or constituting an intentional injury." *Id.* at 429.   Rejecting the insurer's argument, the Michigan Court of Appeals wrote:

> As this Court explained in *Mattson*, the intentional injury exclusion under § 3105(4) requires that the injury be intended, not that an intentional act gave rise to an injury.   In the case at bar, although [the driver] did act intentionally in fleeing and eluding the police, there is no indication that he intended to be injured as a result. . . .   Indeed, the evidence indicated that [the driver] braked the car approximately sixty-three feet from the intersection, but that the car was unable to stop completely because of the excessive speed.

*Id.* (internal citation omitted).

*Schultz v. Auto-Owners Insurance Co.*, 536 N.W.2d 784 (Mich. Ct. App. 1995) (per curiam), also took up the interpretation of § 3105.   The plaintiff, after quarrelling with his girlfriend, "jumped from a moving van that he was driving." *Id.* at 785.   Denied no-fault benefits, the plaintiff brought suit.   The trial court granted the insurer summary judgment and the plaintiff appealed, "argu[ing] that the trial judge erred in failing to focus on his intent, not his

acts, when determining intent as defined by the policy of insurance." *Id*. The Michigan Court of Appeals agreed, writing:

> The trial court did err by referring to an objective standard when considering if plaintiff intended his injuries. Clearly, a subjective standard applies to such inquiries. Despite the court's erroneous reference to an objective standard, we believe it reached the correct result. Viewing the facts in a light most favorable to plaintiff, the evidence showed that he quarrelled [sic] with his girlfriend. He then jumped from a moving van that he was driving. Statements he made before jumping established that he did so either to elicit the girlfriend's sympathy or to arouse feelings of guilt in her. Consequently, plaintiff's intent to cause himself injury can be inferred from the facts.

*Id*. (internal citations omitted) (citing *Forshee*, 499 N.W.2d 423; *Mattson*, 450 N.W.2d 54; and *Frechen*, 326 N.W.2d 566).

*Miller v. Farm Bureau Mutual Insurance Co.*, 553 N.W.2d 371 (Mich. Ct. App. 1996) (per curiam), similarly found that the plaintiff was not entitled to no-fault coverage because of his express statements. The plaintiff attempted to kill himself by driving his truck into a tree at seventy miles an hour. The attempt proved unsuccessful (that it was a suicide attempt was undisputed; the plaintiff testified that he had attempted suicide). *Id*. at 372. When the insurer denied plaintiff's claim for no-fault benefits, litigation ensued. The insurer moved for summary disposition because the plaintiff's injuries resulted from his suicide attempt. The plaintiff responded with evidence that because of his severe depression he lacked the mental capacity to intend to commit suicide. The trial court granted the defendant's motion. Affirming, the Michigan Court of Appeals explained:

> One acts intentionally if he intended both the act and the injury. The subjective intent of an actor is the focus of determining whether the actor acted intentionally. Germane to plaintiff's claim on appeal is whether evidence of an actor's mental capacity raises a factual question regarding the actor's subjective intent. In light of our Supreme Court's decision in [*Auto-Owners Insurance Co. v. Churchman*,

-13-

489 N.W.2d 431 (Mich. 1992)], we conclude that a claim of mental illness, by
itself, does not create a factual question regarding the actor's intent.

553 N.W.2d at 373 (internal citations omitted) (citing *Schultz*, 536 N.W.2d 784; *Forshee*, 499

N.W.2d 423; and *Frechen*, 326 N.W.2d 566).

   *Cruz v. State Farm Mutual Automobile Insurance Co*., 614 N.W.2d 689 (Mich. Ct. App.

2000), once more emphasized that the test for the intentional injury exclusion is subjective, albeit

in dictum.  The plaintiff, injured in an automobile accident, sought no-fault insurance benefits.

The policy included an examination under oath provision.  When the plaintiff refused to submit

to such an examination, the insurer denied the claim.  The trial court granted the insurer

summary disposition because of the plaintiff's noncompliance with the policy provision.

Reversing, the Michigan Court of Appeals noted that "the statute is the rule-book" — "the no-

fault act sets forth the insured's duties of cooperation, and because it does not provide for an

[examination under oath] provision, the provision is contrary to the no-fault act."  *Id*.  at 693

(internal quotation marks omitted) (quoting *Rohlman v. Hawkeye-Security Ins. Co*., 502 N.W.2d

310, 313 (Mich. 1993)).  In dictum, the court reiterated: "In order to find an intentional injury,

plaintiff must have intended both the act and the injury."  *Id*. at 694 (citing *Miller v. Farm

Bureau Mut. Ins. Co*., 553 N.W.2d 371 (Mich. Ct. App. 1996); and *Schultz v. Auto-Owners Ins.

Co*., 536 N.W.2d 784 (Mich. Ct. App. 1995)).

   *Amerisure Insurance Company v. Auto-Owners Insurance Co*., 684 N.W.2d 391 (Mich.

Ct. App. 2004) (per curiam), yet again affirmed the subjective standard.  An intoxicated

passenger jumped out of a moving vehicle and was injured.  At trial, he "argued that the jury

should be allowed to consider evidence of his intoxication in making its determination of intent."

684 N.W.2d at 397.  The trial court permitted the argument.  The jury concluded that the

passenger did not intentionally injure himself, and the insurer appealed.  Affirming, the Michigan

Court of Appeals quoted the Michigan Supreme Court for the proposition that

> where an insured dies as the result of an intentional act, such as voluntary
> intoxication, but did not intend or expect death to result, such death is accidental
> for the purposes of an accidental death policy as involved herein.  In the instant
> case, although the decedent's introduction of alcohol into his body was
> intentional, the factfinder must determine whether he intended or expected it to
> have fatal consequences.

*Id*. at 398 (quoting *Collins v. Nationwide Life Ins. Co*., 294 N.W.2d 194 (Mich. 1980)).

In contrast to this long line of decisions of the Michigan Court of Appeals, the Michigan

Supreme Court has denied each application for leave to appeal in no-fault cases where one of the

issues was whether the claimant's injuries were suffered intentionally.  *See, e.g.*, *Univ. Rehab.*

*Alliance, Inc. v. Farm Bureau Gen. Ins. Co. of Mich*., 763 N.W.2d 908 (Mich. 2009); *Budget*

*Rent-A-Car Sys., Inc. v. City of Detroit*, 757 N.W.2d 865 (Mich. 2008); *Brown v. Mich. Millers*

*Mut. Ins. Co*., 651 N.W.2d 748 (Mich. 2002).  In *University Rehabilitation Alliance*, the claimant

was injured after she was allegedly pushed from a car by her boyfriend.  763 N.W.2d at 956.  In

*Budget Rent-A-Car Systems*, the claimant was injured after fleeing a police officer and pointing a

handgun at the officer.  757 N.W.2d at 866 n.3 (Weaver, J., dissenting).  In *Brown*, the claimant

was injured while fleeing the scene of a drive-by shooting.  651 N.W.2d at 749.  In all three

cases, the claimants were awarded benefits under the no-fault act.

As noted, the Sixth Circuit instructs that although this Court is not required to follow the

interpretation of the Michigan Court of Appeals, that court's decisions should be treated "as

authoritative absent a strong showing that the state's highest court would decide the issue

differently."  *Kurczi v. Eli Lilly & Co*., 113 F.3d 1426, 1429 (6th Cir. 1997) (internal quotation

marks and alterations omitted) (quoting *Garrett v. Akron-Cleveland Auto Rental, Inc.*, 921 F.2d

659, 662 (6th Cir.1990)).  Here, no such "strong showing" is made.  The Michigan Supreme Court has given no indication that it would adopt a contrary interpretation.

The decisions of Michigan Court of Appeals, in turn, establish two fundamental principles regarding § 3105.  First, an injury is suffered intentionally only if the injured person "intended both the act and the injury." *Amerisure*, 684 N.W.2d at 398 (quoting *Miller*, 553 N.W.2d at 373).  For an injury to be intentional, the actor must have specifically, subjectively intended to injure himself (essentially, a "masochist exemption" from coverage).  Injuries that are the unintended result of an intentional act are not excluded from coverage, even if the injury was foreseeable and even if the act causing the injury was negligent or reckless.

Second, in theory intent can be established by circumstantial evidence — a person's "intent to cause himself injury can be inferred from the facts." *Schultz*, 536 N.W.2d at 785. Thus, "Where the injury or resulting death is the natural, anticipated and expected result of an intentional act, courts may presume that both act and result are intended." *Mattson*, 450 N.W.2d at 56–57 (quoting *Transamerica*, 407 N.W.2d  at 28).  This principle, however, is far more theoretical than practical. Mere circumstantial evidence has never been held sufficient to establish specific intent by the Michigan Court of Appeals.  Rather, in each appellate case addressing the issue, intent has been established only by an express statement of the injured party. *Miller*, 553 N.W.2d at 372–73 (injured party acknowledged that he had attempted suicide by driving into tree at seventy miles an hour); *Schultz v. Auto-Owners Insurance Co*., 536 N.W.2d at 785  ("Statements [the injured party]  made before jumping established that he did so either to elicit the girlfriend's sympathy or to arouse feelings of guilt in her."); and *Mattson*, 450 N.W.2d at 56 (injured party acknowledged that he had attempted suicide by running into oncoming traffic).

-16-

If this Court was interpreting the statute as a matter of first impression, it should be acknowledged, it might place a different construction on the relevant language.  Unlike the subjective standard applied by the Michigan Court of Appeals, for example, an objective standard would give greater significance to the second sentence of the § 500.3105(4), which provides:

> [When] a person knows that bodily injury is substantially certain to be caused by his act or omission, he does not cause or suffer injury intentionally if he acts or refrains from acting for the purpose of averting injury to property or to any person including himself.

Mich. Comp. Laws § 500.3105(4).  This sentence (something of a hero exemption) confers coverage when "a person knows that bodily injury is substantially certain," provided that the individual sacrifices his bodily health "for the purpose of averting injury to property or to any person."  *Id.*  By carving out this exemption, the sentence implies that a person not acting heroically (not acting to avert injury to people or things), suffers injury intentionally when the person "knows that bodily injury is substantially certain to be caused by his act or omission."  To see why, one need only modify the sentence's dependent clause from negative to positive, producing the sentence's logical corollary:

> [When] a person knows that bodily injury is substantially certain to be caused by his act or omission, he does . . . cause or suffer injury intentionally [provided that he does not act or refrain] from acting for the purpose of averting injury to property or to any person including himself.

*Id.*  This suggests that knowing that an act is quite likely to result in bodily injury is sufficient — the subjective intent to injure oneself is not necessary.

Michigan courts, however, have consistently declined to give such a reading to the statue.[1]  This Court, out of respect for our federal system and to further consistency and

---

[1] As another federal judge observed when presented with an issue of construction of a state statute that the federal court would perhaps have interpreted differently:

predictability in the law, will therefore not do so either.  Instead, the prevailing interpretation of the Michigan courts applies in this case.  An injury is suffered intentionally only if the actor specifically, subjectively intended both the act and the injury.

Here, there is no evidence that Carter subjectively intended to injure himself.  The only two witnesses to the incident, Randle and Whitley, both testified that they did not observe Carter say or do anything that indicated he subjectively intended to injure himself.

Instead, drawing all reasonable factual inferences in Allstate's favor (as the Court must if it is to grant summary judgment to Lighthouse and Hurley), the evidence shows that Carter quarreled with his girlfriend, exited the vehicle, only to climb onto the top of the vehicle as it began pulling away.  Although the gentleman's actions were dangerous and the risk of bodily injury was foreseeable, they do not in themselves suggest that he acted with the specific, subjective intent to injure himself.

Climbing onto a moving vehicle is an inherently dangerous activity that carries a foreseeable risk of injury — however, injury is not necessarily the "anticipated and expected result" of the climber.  For example, the United States Centers for Disease Control and Prevention reports: "Despite the potentially lethal consequences of this activity, car surfing shows no evidence of decreasing popularity."  CDC Morbidity and Mortality Weekly Report, *Injuries Resulting from Car Surfing — United States, 1990–2008* (Oct. 17, 2008), *available at* http://www.cdc.gov/mmwr/preview/mmwrhtml/mm5741a2.htm.   The CDC elaborates: "Car surfers might underestimate the risk and might not anticipate the sudden vehicle movements that

---

A federal judge sitting in a diversity jurisdiction case has not a roving commission to do justice or to develop the law according to his, or what he believes to be the sounder, views.  His problem is less philosophical and more psychological.  His task is to divine the views of the state court judges.

*Pomerantz v. Clark*, 101 F. Supp. 341, 345–46 (D. Mass. 1952).  Indeed, the rule of law requires no less — citizens must know what the law is in order to be able to order their affairs accordingly.

can dislodge them from the vehicle, even at very low speeds."[2]  *Id*.  Nevertheless, car surfers are

not likely to lose coverage for their associated medical expenses if they practice their hobby in

the state of Michigan.

Indeed, in this case, unlike in *Miller*, *Schultz*, or *Mattson*, Carter made no statements

suggesting a masochistic motive for his actions.  That is, unlike the gentlemen in *Miller*, *Schultz*,

or *Mattson*, nothing Carter said suggests that he wished to injure himself.  In sum, Allstate

advances no evidence that Carter specifically, subjectively intended to injure himself.  But

Lighthouse and Hurley likewise do not have any direct evidence of what Carter's specific intent

was.  Thus, the burden of proof on the issue is critical.

**B**

"It is without dispute that the insured bears the burden of proving coverage, while the

insurer must prove that an exclusion to coverage is applicable."  *Heniser v. Frankenmuth Mut.*

*Ins. Co.*, 534 N.W.2d 502, 505 n.6 (Mich. 1995) (quoting *Arco Indus. Corp. v. Am. Motorists*

*Ins. Co*., 531 N.W.2d 168, 182 (Mich. 1995) (Boyle, J., concurring) (internal quotation marks

omitted)).  Likewise, the law is well established that the provisions of the no-fault act form part

of the insurance policy "as though the statutes were a part of the contract, for it is to be presumed

that the parties contracted with the intention of executing a policy satisfying the statutory

requirements."  *Rohlman v. Hawkey-Sec. Ins. Co.*, 502 N.W.2d 310, 313 n.3 (Mich. 1993).

Here, both the text of § 500.3105 and the case law of the Michigan Court of Appeals

establish that the section creates an exclusion from coverage for intentional injuries.

First, the text of § 500.3105 confers coverage, unless the injury is intentional, with the

statute providing in pertinent part: "Bodily injury is accidental as to a person claiming personal

---

[2] This is not to suggest that Carter himself was car surfing, of course, merely that injury is not necessarily the "anticipated and expected result" of climbing onto a moving vehicle.

protection insurance benefits *unless* suffered intentionally by the injured person or caused intentionally by the claimant." *Id*. (emphasis added).  Thus, the statute creates coverage for accidental injury ("Bodily injury is accidental as to a person . . ."), and then carves out an exclusion for intentional injuries (". . . unless suffered intentionally").

Had the Michigan legislature wished to adopt accidental injury as a trigger of coverage, in contrast, the provision might have provided: "Bodily injury is not accidental as to a person claiming personal protection insurance benefits unless the claimant establishes that the injury was neither suffered intentionally by the injured person nor caused intentionally by the claimant."  Instead of enacting such a provision, however, the legislature chose to enact a statute providing coverage except for intentional injury, which is excluded from coverage.

Consistent with this analysis, the Michigan Court of Appeals holds that § 3105(4) creates an exclusion, labeling it "the intentional injury exclusion." *Bronson Methodist Hosp. v. Forshee*, 499 N.W.2d 423, 429 (Mich. Ct. App. 1993) (citing *Mattson v. Farmers Ins. Exchange*, 181 Mich. App. 419, 424, 450 N.W.2d 54 (1989)); *see generally* 2 Mich. Civ. Jur. *Automobiles and Motor Vehicles* § 266 (titling discussion of § 500.3105(4) as "intentional injury exclusion"); *cf.* Richard Lord, 17 *Williston on Contracts* § 49:115 ("Comprehensive general liability, life, fire, professional liability and homeowners policies all frequently include clauses covering 'accidents' but excluding coverage for casualties resulting from intentional acts, criminal acts, or acts with expected or intended results."); *but cf. Schultz*, 536 N.W.2d at 785 (referencing the claimant's "burden of showing no intent to injure himself").  Because § 3105 creates an exclusion from coverage for injuries "suffered intentionally," the insurer bears the burden of proof.

Consequently, Allstate bears the burden of establishing that Carter specifically, subjectively intended to injure himself. Because Allstate has not carried this burden, Lighthouse and Hurley are entitled to judgment.

**IV**

Accordingly, it is **ORDERED** that Hurley's motion for summary judgment (ECF No. 17) is **GRANTED**.

It is further **ORDERED** that Allstate's motion for summary judgment (ECF No. 18) is **DENIED WITH PREJUDICE**.

It is further **ORDERED** that Lighthouse's motion for summary judgment (ECF No. 19) is **GRANTED**.

Dated: March 7, 2012

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 7, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS